UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| JANET CROWE, *et al.*, | ) | |
| | ) | Case No. |
| Plaintiffs, | ) | 5:18-cv-185-JMH |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| IAN A. JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*

On December 14, 2017, the Plaintiffs, Janet Crowe, Phillip Crowe, and Faye Crowe (the "Crowes" or the "Plaintiffs") were involved in an automobile collision with Defendant, Ian A. Johnson ("Johnson or the "Defendant"), a Michigan resident, in Bowling Green, Kentucky. Johnson rear-ended the Crowes vehicle when, while accelerating forward in moderate to heavy traffic, a water bottle fell onto the floor of his vehicle, prompting him to reach down, take his eyes off the road, and attempt to secure the bottle.

The parties have each moved for partial summary judgment. [DE 27, 28]. The Crowes move for summary judgment on the issue of liability. [DE 27]. Johnson moves for summary judgment on the issue of punitive damages. [DE 28]. The parties have responded in opposition to the applicable motions. [DE 29-30]. Additionally, the parties have replied in support of their motions or the time to reply has expired. [DE 32]. As a result, this matter is ripe for review and consideration and all pending motions

for summary judgment will be consolidated in this memorandum opinion and order.

For the reasons that follow, the Crowes motion for partial summary judgment [DE 27] as to liability is **GRANTED** and Johnson's motion for partial summary judgment [DE 28] as to punitive damages is **GRANTED.**

## I.    Procedural and Factual Background

In the evening of December 14, 2017, the Plaintiffs, Janet Crowe, Phillip Crowe, and Faye Crowe set out from their home in Perryville, Kentucky, intent on visiting the home of Janet's daughter, Elizabeth Waters, in Alabama to celebrate the Christmas holiday. [DE 29-5 at 9, 35-37, PageID #718, 744-46]. The Crowes loaded up their 2015 Buick Regal with their dog, Christmas presents for the children, and even packed a twenty-five-pound turkey for the occassion. [*Id.* at 35-37, PageID #35-7].

After an hour and a half of driving, the Crowes decided to stop for supper at a Steak 'n Shake restaurant in Bowling Green, Kentucky. [Id. at 37-8, PageID #746-47]. Upon finishing their meal, the Crowes piled back into the car to complete the remaining three and a half hours of their journey. [*Id.*]. Janet Crowe was driving, with her husband, Phillip, seated in the front passenger seat, and her mother, Faye sitting directly behind Phillip in the right-rear passenger seat. [*Id.* at 35, PageID # 744]. All dutifully fastened their seatbelts and the Crowes pulled out of

the Steak 'n Shake, headed eastbound on Scottsville Road toward the I-65 intersection. [*Id.* at 39-40, PageID #748-49]. At the time, the weather was fair and the road conditions were good. [DE 27-1 at 16, PageID #364; DE 29-5 at 35-36, PageID #744-45].

Unfortunately, on their way to I-65 southbound interchange, the Crowes encountered moderate to heavy traffic. [DE 29-5 at 38-39, PagedID #747-48]. After making it a little way down Scottsville Road toward I-65 South, the Crowes encountered a stoplight at an intersection. [*Id.* at 49-50, PageID #758-59]. Ms. Crowe's vehicle was in the right hand-lane, as she was preparing to take the ramp onto I-65 south. [*Id.* at 50, PageID #759]. The Crowes' vehicle was stopped at the light approximately one car length behind a 2015 white Nissan, occupied by Jackson and Rachel Daugherty. [DE 27-3 at 5, 22, PageID #472, 489; DE 29-5 at 51, PageID #760].

The Defendant, Ian Johnson, who was staying at a nearby Microtel, was returning from his own supper that night in his 2018 Chevrolet Camaro. [DE 27-1 at 15, PageID #363]. Johnson proceeded towards intersection on Scottsville Road and came up behind the Crowes' Buick. [*Id.* at 14-15, PageID #362-363].

The stop-light at the intersection turned green and the Daughertys, who were in the lead vehicle of the three, accelerated forward through the intersection. [DE 27-3 at 5, PageID #472; DE 32-1 at 2, PageID #823]. Janet Crowe also began accelerating

3

forward into the intersection and proceeded beyond the stoplight. [DE 29-5 at 49-450, PageID #758, 759].

Johnson began to accelerate as well. [DE 27-1 at 21, PageID #372]. As the cars proceeded to move, Johnson's water bottle, which had been sitting near his shifter, fell on the floor of his car. [*Id.* at 14, PageID #362]. He went to reach for the water bottle while continuing to accelerate forward. [*Id.*] In doing so, Johnson admits that he made a mistake by taking his eyes off the road, reducing his ability to slow down. [*Id.* at 14, 22-29, 44, 57-58, PageID #362, 370-77, 392, 405-06].

Due to the off-ramp, traffic was backed-up and moving slowly. [DE 29-5 at 40, PageID #759]. As a result, Ms. Crowe slowed her car to a stop just after she passed through the intersection. [*Id.* at 40, PageID # 749]. Ms. Crowe then glanced at her rear-view mirror. [*Id.* at 40, 50, PageID #749, 759]. As she did, she saw a flash of light and the rear of the Crowes' car was impacted by Johnson's vehicle. [*Id.* at 40, PageID #749]. Other than the lights she saw behind her, Ms. Crowe never saw the Defendant, Ian Johnson, in his vehicle prior to the collision nor was she aware of what he was doing in his vehicle. [*Id.* at 52, PageID #761]. Ms. Crowe estimates that Johnson was "going pretty fast." [DE 29-5 at 40, 52, PageID #749, 761].

Around this same time, Jackson Daugherty, who was planning on merging into the left lane, checked his rearview mirror. [DE

27-3 at 6, 18 PageID #473, 485].  At that time, his vehicle had already moved through the intersection at approximately 10 to 15 miles per hour.  [DE 27-3 at 27, PageID #494].  Daugherty looked at his rear-view mirror and believes he saw either lights from Johnson's vehicle or glare off the Crowes' vehicle.  [*Id.* at 10, 23, and 31, PageID #477, 490, and 498].  Then, his car was, in turn, impacted from the rear by the Crowes' vehicle.  [*Id.* at 31, PageID #498].

Daugherty had not previously noticed Johnson's vehicle.  [*Id.* at 22-23, PageID #488-89].  Nor had he heard a horn prior to the impact.  [*Id.* at 21-22, PageID #488-89].  In his testimony Daugherty estimated that Johnson's vehicle was moving at the speed limit, which he estimated to be "[m]aybe 40, 45[,]" miles per hour. [DE 29-3 at 10, PageID #676].  However, though he claims to have seen Johnson's vehicle, Daugherty admits he could only guess as to its speed at prior to the collision.  [*Id.* 25-26, PageID #691-92].

In March 2018, the Crowes filed this lawsuit.  [DE 1]. The Crowes' Complaint generally alleges that Johnson's negligent operation of his motor vehicle was a breach of duty owed to the Crowes and a direct and proximate cause of the collision and any resulting injuries and economic losses suffered by the Crowes. [*Id.* at 1-2, PageID #1-2, ¶¶ 5,7].

The Crowes seek compensatory damages for their personal injuries, emotional distress, medical expenses, rehabilitation,

physical therapy expenses and medical devices, living and transportation accommodations, pain and suffering, loss of enjoyment of life, the cost of implementing a reasonably adequate life care plan, and any other compensatory damages. [*Id.* at 2, PageID #2]. The Crowes further seek punitive damages against Johnson, stemming from their claim that his alleged behavior was willful and wanton. [Id. at 1 and 3, PageID #1 and 3].

## II. Legal Standard

Summary judgment is appropriate only when no genuine dispute exists as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one "that might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden to show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013) (internal quotations omitted). The Court construes the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in the non-moving party's favor. *See Anderson*, 477 U.S. at 248; *Hamilton Cty. Educ. Ass'n v. Hamilton Cty. Bd. of Educ.*, 822 F.3d 831, 835 (6th Cir. 2016).

In a diversity action like this one, the Court must apply the substantive law of the forum state and federal procedural law. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427-28 (1996); *Hanna v. Plumer*, 380 U.S. 460, 465-66 (1965); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938); *Hoven v. Walgreen Co.*, 751 F.3d 778, 783 (6th Cir. 2014). Thus, "where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same . . . as it would be if tried in a State court." *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945). Ultimately, to determine whether summary judgment should be granted here, the Court must look to state law and court decisions, as well as other relevant materials. *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999).

## III. Analysis

**A.   The Crowes' Motion for Partial Summary Judgment**

The Crowes ask the Court to grant summary judgment for them on the issue of Johnson's alleged negligence. [DE 27 and 30]. The Crowes argue that summary judgment is appropriate because Johnson has "repeatedly and consistently admitted that he was the sole cause of the collision" with the Crowes. [DE 27 at 5, PageID #346]. In particular, the Crowes cite to Johnson's testimony that he was not watching the road and was reaching for a water bottle

when he rear-ended the Crowes. [DE 27 at 5-6, PageID #347]. This, the Crowes argue, establishes Johnson's negligence.

In response, Johnson states that the Crowes incorrectly argue that "because a rear-end collision occurred, the Defendant must have been going too fast, must have been following too close, and ultimately, must have been negligent." [DE 30 at 2, PageID #803]. In reconstructing the Crowes argument, Johnson then heavily relies on *Kramer* and *Lucas*, stating that Kentucky law is clear that rear-ending a vehicle is not dispositive of negligence. [DE 30 at 1-2, PageID #802-3 (citing 987 S.W.2d 799 (Ky. 1999); 409 S.W.2d 297 (Ky. 1966))].

Under Kentucky law, "[i]n order to state a cause of action based on negligence, a plaintiff must establish a duty on the defendant, a breach of the duty, and a causal connection between the breach of the duty and an injury suffered by the plaintiff." *Lewis v. B & R. Corp.*, 56 S.W.3d 432, 436-437 (Ky. Ct. App. 2001). As Johnson points out, under Kentucky law, "[a] driver of an automobile that strikes another in the rear is not subject to strict liability, but rather must be proven to have violated the duty of ordinary care before he can be found to be at fault." *USAA Cas. Ins. v. Kramer*, 987 S.W.2d 779, 782 (citing *Lucas v. Davis*, 409 S.W.2d 297, 299-300 (Ky. 1966)).

The Commonwealth has codified common law duties for drivers. *White v. Jones*, No. 2002-CA-1811, 2003 WL 21714960, *2 (Ky. Ct.

App. 2003) (citing *Lucas v. Davis,* 409 S.W.2d 297, 299-300 (Ky. 1966)). Kentucky courts have recognized those codified duties to include the following:

> 1) Violation of KRS 189.340(6)(a), which directs that the operator of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent having regard for traffic and road conditions;
>
> 2) Violation of KRS 189.390(1), which directs that the operator of a motor vehicle shall not operate the vehicle at a greater speed than is reasonable and prudent in light of traffic and road conditions;
>
> 3) violation of KRS 189.290(1), which directs all motorists to drive in a careful manner with regard for the safety and convenience of pedestrians and other vehicles on the highway;
>
> 4) violation of KRS 189.080(1), which requires the sounding of a horn or other sound device to warn of the approach of a motor vehicle.

*Id.* at *3 (internal citation omitted); *see also Kramer*, 987 S.W.2d at 782 (citing KRS § 189.290(1)).

Despite Johnson's convenient framing of the Crowes argument, *Kramer* and *Lucas* are not dispositive of the issue here. Unlike the appellee's argument in *Lucas*, the Crowes do not argue that Johnson implicitly breached the common law duties simply by virtue of rear-ending them. *See Lucas*, 409 S.W.2d at 300 ("[A]ppellee's position seems to be that since there was an accident it is apparent that: (1) [appellant] was following too closely, (2) and

was going too fast, (3) and was not careful and prudent, and (4) he didn't blow his horn at all, so he was negligent.").

Instead, the Crowes argue that Johnson breached his duty because Johnson admits that he accelerated forward and then proceeded through an intersection while looking down and ultimately reaching for a fallen water bottle while in congested, stop-and-go traffic. [DE 27 at 5-6, PageID #347]; *see* KRS § 189.290(1) (providing drivers have a duty of "driving in a careful manner with regard for the safety and convenience of . . . other vehicles on the highway . . . .").

In his deposition, Johnson did not deny taking his eyes off the road or looking down for the fallen water bottle. [DE 27-1 at 57, PageID #405]. He further stated "I believe that me taking my eyes off the road did reduce my response time to be able to stop..." [DE 27-1 at 58, PageID #406]. Moreover, as the Crowes correctly note, not only has Johnson testified that he was looking down at the floor for the water bottle and was still accelerating when the collision occurred, but further that Johnson admits that but for his actions, he would have been able to see the Crowes' brake lights and been able to stop. [DE 27-1 at 14, 22-29, 44, 58, PageID #362, 370-77, 392, 406]. Johnson even went so far as to state that his decision to look down for the water bottle was a mistake, stating:

> So I think me looking down was a mistake that
> contributed to the accident. I can't say what
> happened in front of me or what caused the
> cars in front of me to stop but I know looking
> down did decrease my ability to stop the car.

[DE 27-1 at 43, 58-59, PageID #391, 406-7].  Johnson even agreed
that it was his responsibility as a driver to see the roadway ahead
of him. [*Id.* at 44, PageID #392].

Johnson's testimony and admissions, even in a light most
favorable to him, establish that he had his head down and was
looking for a fallen water bottle while accelerating in modest to
heavy traffic.  [*Id.* at 14, 22-29, 44, 57-58, PageID #362, 370-
77, 392, 405-06].  Johnson suggests that summary judgment is
precluded because there are potential issues of fact pertaining to
comparative fault that remain.  [DE 30 at 2, PageID #803; *see also*
DE 32-1 at 4, PageID #825 (stating "evidence may reveal actions by
the operators of the other vehicles that contributed to this
accident")].  However, Johnson's argument is unavailing.  By his
own admission, he could not see what caused the cars to slow and
stop in front of him.  [*Id.* at 44, PageID #392].  Considering this
admission, Johnson's vague suggestion that some other person's
conduct is responsible for his rear-ending the Crowes is meritless.
Nor is there any other indication that any other person's conduct
contributed to the collision between his vehicle and the Crowes.

Accordingly, Johnson breached his duty of acting with careful
regard for the safety and convenience of pedestrians and other

11

vehicles on the highway when he looked and reached down for a fallen water bottle and took his eyes off the road, while accelerating modest to heavy traffic. [DE 27-1 at 43, 58-59, PageID #391, 406-7]. Johnson admits that but for looking down he would have been able to stop his vehicle from colliding with the Crowes' vehicle and that his action contributed to the collision. Accordingly, there is no genuine dispute of material fact as it relates to the Crowes claim that Johnson's negligent operation of his vehicle caused the collision.

**B.    Johnson's Motion for Partial Summary Judgment on Punitive Damages**

Johnson's partial motion for summary judgment regarding the Crowes' punitive damages claims is also before the Court.[1]

---

[1]    Defendant Johnson attached several exhibits to his motion for partial summary judgment [DE 28], including two (2) letters of correspondence, dated December 3, 2018, [DE 28-4] and December 4, 2018, [DE 28-5]. Having reviewed these exhibits the Court finds that these letters contain settlement discussions between the named parties.

The Federal Rules of Evidence apply in diversity cases. *See, e.g.*, *Lee v. Medical Protective Co.*, 858 F. Supp. 2d 803, 807 (E.D. Ky. 2012). The Sixth Circuit notes that Fed. R. Evid. 408 "prohibits the admission, for certain purposes, of offers to compromise along with any statement made during the course of such compromise negotiations." *See Gjokaj v. United States Steel Corp.*, 700 F. App'x. 494, 501 (6th Cir. 2017) (citing Fed. R. Evid. 408(a)(1)-(2)). Specifically, Fed. R. Evid. 408(a)(2) provides that evidence of conduct or a statement made during compromise negotiations is inadmissible in civil cases to prove or disprove the validity or amount of a disputed claim. *See, e.g.*, *Seye v. Community Yellow Cab*, Civil Action No. 10-234, 2013 WL 1332430, at *10 (E.D. Ky. 2013). The Sixth Circuit has held that "this Rule applies only to preclude evidence related to the claim 'that was

Defendant Johnson argues that the Crowes are unable to satisfy the threshold requirements under Kentucky law to raise a jury question on punitive damages. In particular, Johnson argues that the Crowes may not recover punitive damages because they have "produced no evidence" establishing their burden of proving by "clear and convincing evidence that [Johnson] acted with oppression, fraud, or malice toward them . . . ." [DE 28, PageID #3-5]. For the reasons explained below, the Court agrees.

### i. The Standard for Punitive Damages

Kentucky law requires a plaintiff pursuing punitive damages to prove "by clear and convincing evidence, that the defendant from whom such damages are sought acted toward the plaintiff with oppression, fraud or malice." KRS § 411.184(2). Although the "malice" provision was found to be unconstitutional, *Berrier v. Bizer*, 57 S.W.3d 271, 283-84 (Ky. 2001), a showing of "gross negligence" remains sufficient. *Turner v. Werner Enterprises, Inc.*, 442 F. Supp. 2d 384, 385 (E.D. Ky. 2006); *see also Williams v. Wilson*, 972 S.W.2d 260, 262-65 (Ky. 1998). The clear and

---

the subject of the compromise.'" *Gjokaj*, 700 F. App'x. at 501 (internal citations omitted).

In the instant case, the correspondence between Counsel for Defendant and Counsel for Plaintiff can only be construed as an offer to settle the Crowes' claim for punitive damages and was made many months after the outset of this litigation. Thus, the Court views the correspondence as offers of compromise and evidence of negotiation, which is inadmissible to support summary judgment on this issue. *See* Fed. R. Evid. 408.

convincing standard can be satisfied by producing evidence of a probative and substantial nature that carries enough weight to convince ordinarily prudent-minded people of its validity. *See W.A. Cabinet for Health and Family Servs.*, 275 S.W.3d 214, 220 (Ky. Ct. App. 2008). Notably, "[W]here the nonmoving party must meet a higher burden of proof than usual, that party must meet the same burden in resisting . . . summary judgment . . . ." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

The Sixth Circuit has further noted that, under Kentucky law, punitive damages may be awarded when negligence is "accompanied by wanton or reckless disregard for the lives, safety, or property of others." *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 471 (6th Cir. 2004). The Kentucky Supreme Court has held that the conduct at issue must, at least, amount to "gross negligence" to impose punitive damages. *See Williams v. Wilson*, 972 S.W.2d 260 (Ky. 1998). Thus, in order to justify punitive damages, "there must first be a finding of failure to exercise reasonable care, and then an additional finding that this negligence was accompanied by 'wanton or reckless disregard for the lives, safety or property of others.'" *Horton v. Union Light, Heath & Power Co.*, 690 S.W.2d 382, 389-90 (Ky. 1985).

**ii. Punitive Damages Against Johnson**

Johnson argues that he was, at worst, negligent and that punitive damages cannot be assessed against him. The Crowes respond by arguing that a jury could find that Johnson's operation of his vehicle was sufficiently reckless as to constitute willfulness and wantonness, much less gross negligence. Specifically, they argue that Johnson acted with "slight or no care" toward them because he "intentionally ran a light, took his eyes off the traffic ahead of him, faced the floor of his car searching for a capped water bottle, while accelerating in congested traffic." [DE 29 at 2, PageID #29]. Plaintiff argues that such actions are "as reckless as a driver whose vision is impaired by alcohol or on drugs." [DE 29 at 2, PageID #29].

In Kentucky, "the well established common law standard for awarding punitive damages was [and is] gross negligence." *Kinney v. Butcher*, 131 S.W.3d 357, 358-59 (Ky. Ct. App. 2004) (internal citations and quotations omitted). "The prevailing understanding defines gross negligence as a 'wanton or reckless disregard for the safety of other persons.'" *Id*. at 359 (quoting *Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 52 (Ky. 2003).

In defining gross negligence, the Kentucky Court of Appeals has stated:

> While the courts of the Commonwealth have not
> always used precisely the same language in
> defining gross negligence, the prevailing

> understanding defines gross negligence as a
> "wanton or reckless disregard for the safety
> of other persons." It is not necessary that
> the jury find the defendant to have acted with
> express malice; rather, it is possible that a
> certain course of conduct can be so outrageous
> that malice can be implied from the facts of
> the situation.

*Kinney v. Butcher,* 131 S.W.3d 357, 359 (Ky. Ct. App. 2004) (internal citations and quotations omitted).

The test of gross negligence is "whether the misconduct 'has the character of outrage.'" *Horton v. Union Light, Heat, & Power Co.*, 690 S.W.2d 382, 389 (Ky. 1985) (internal quotations and citations omitted). Kentucky courts have found such outrageous conduct, and thus punitive damages justified, when a driver is intoxicated. *See, e.g.*, *Stewart v. Estate of Cooper*, 102 S.W.3d 913 (Ky. 2003); *Shortridge v. Rice*, 929 S.W.2d 194 (Ky. Ct. App. 1996). Courts have also found punitive damages warranted when misconduct is numerous or egregious or both. *See Phelps v. Louisville Water Co.*, 103 S.W.3d 46 (Ky. 2003) (stating a jury could find gross negligence where there were eighteen instances of misconduct).

In other circumstances, Kentucky courts have been reluctant to allow punitive damages. For example, in *Kinney*, the Kentucky Court of Appeals affirmed a trial court's refusal to give a punitive damages instruction where there was "evidence that the defendant was speeding and attempting to pass another car on a

two-lane road in a no-passing zone." *Turner v. Werner Enterprises,*
*Inc.*, 442 F. Supp. 2d 384, 386 (E.D. Ky. 2006) (citing *Kinney v.*
*Butcher*, 131 S.W.3d 357, 359 (Ky. App. 2004)). In doing so, the
*Kinney* court reasoned that allowing such misconduct to be
characterized as reckless would destroy the distinction between
ordinary and gross negligence, stating:

> Were we to accept Kinney's argument that
> [speeding and trying to pass in a no-passing
> zone] amounts to wanton or reckless disregard
> for the safety of others, it would effectively
> eliminate the distinction between ordinary and
> gross negligence in the context of automobile
> accidents. Nearly all auto accidents are the
> result of negligent conduct, though few are
> sufficiently reckless as to amount to gross
> negligence, authorizing punitive damages. We
> are of the opinion that punitive damages
> should be reserved for truly gross negligence,
> as seen in cases such as *Shortridge v. Rice,*
> *Stewart v. Estate of Cooper,* and *Phelps v.*
> *Louisville Water Company.* In *Shortridge* and
> *Stewart,* the defendant tortfeasors were
> driving while intoxicated; and in *Phelps,* the
> jury was presented with eighteen instances [of
> the defendant's misconduct].

*Kinney*, 131 S.W.3d 357, 359 (footnotes omitted).

Applying *Kinney*, this Court, in *Turner v. Werner Enterprises,*
*Inc.*, denied the plaintiff's claims finding that the alleged
misconduct of driving while sleepy, within the speed limit, proper
lane, and without any suggestion of intoxication, did not even
"match the level of culpability of the defendant in *Kinney*, in
which punitive damages were not available." 442 F. Supp. 2d at
386.

As the Crowes note, *Gersh* is example of a case where alcohol was not at issue, and, nevertheless, punitive damages were awarded due to the defendant's particularly egregious conduct. 239 S.W.3d 567 (Ky. Ct. App. 2007). In *Gersh*, the defendant operated a motor vehicle twenty-four miles per hour in excess of the posted speed limit, was informed by one of his two passengers of an upcoming, sharp curve in the road, and did not slow down, with two passengers in the vehicle and in darkness. *Id.* at 572.

However, even the Court in *Gersh* was hesitant to find the defendant's conduct to be grossly negligent, and narrowly distinguished his conduct from the defendant's conduct in *Kinney* stating:

> Had Gersh been traveling alone going thirty-four miles over the speed limit on an interstate highway we might conclude he was only negligent if he had an automobile accident and injured someone. But, in the case at hand, he had two passengers in the car and disregarded their safety while recklessly traveling at excessive speeds on a curvy road. Due to these factors, we find that the present case is distinguishable from *Kinney*.

*Id.*

The Crowes argue that Johnson's misconduct in the case at bar is similar to the egregious misconduct in *Gersh*. In fact, the Crowes go further, urging the Court to find Johnson's conduct willful and wanton. The Crowes take particular issue with the fact that Johnson admits that he could not see roadway. This, the

Crowes argue, is not ordinary negligence but gross negligence. The Court disagrees.

While Johnson's culpability for the incident certainly does not have the reprehensible character of outrage of a driver causing a wreck when intoxicated, neither does it rise to the particularly egregious level of misconduct as that of the driver in *Gersh*. In fact, Johnson's misconduct fails even to rise to the level of misconduct in *Kinney*. Instead, it falls into that category of ordinary negligence this Court found in *Turner*, for which punitive damages are unavailable.

Although the Crowes argue that Johnson may have been driving at or slightly above the speed limit, they have produced no evidence establishing Johnson's speed. [DE 29]. They only state that he was "going pretty fast." [DE 29-5 at 40, 52, PageID #749, 761]. The investigating officer testified that he estimated the speed of Johnson's vehicle at between 35 and 40 miles per hour, but he concedes that he is "not trained" to estimate the speed of vehicles. [DE 29-2 at 23, PageID # 642]. In his testimony Jackson Daugherty could only estimate that Johnson's vehicle was moving at the posted speed limit of 40 or 45 miles per hour, but concedes this was nothing more than a guess. [DE 29-3 at 10, 25-26, PageID #676, 691-92].

Even assuming their high estimate is accurate, as the *Kinney* court did, it does not reach the level of culpability even of the

defendant in *Kinney*, who exceeded the speed limit by ten miles per hour and drove into oncoming traffic, attempting to pass the car ahead of him. 131 S.W.3d at 359. Instead, Johnson's conduct is most like that of the defendant in *Turner*, where this Court determined punitive damages were not available when the when the defendant's alleged conduct included driving while sleepy, within the speed limit, proper lane, and without any suggestion of intoxication. 442 F. Supp. 2d at 386.

The Court finds that under the gross negligence standard in Kentucky, even reading the facts in the light most favorable to the Crowes, Johnson is entitled to partial summary judgment on the unavailability of punitive damages. The Crowes have failed to establish by clear and convincing that Johnson's conduct was anything more than ordinary negligence. There is no dispute that Johnson looked down and reached for a fallen water bottle while accelerating in moderate to heavy traffic. But these facts simply fail to rise to the level of outrageous or egregious misconduct required to allow punitive damages. Johnson may have been negligent, but the Crowes, who have the burden to establish by "clear and convincing" evidence that Johnson's conduct was outrageous, have failed to do so. Accordingly, Johnson's actions constitute only ordinary negligence under Kentucky law and do not warrant a punitive damage award.

### IV. CONCLUSION

The facts, even when read in the light most favorable to the Defendant, establish that the Defendant negligently caused a rear-end collision with the Plaintiffs' vehicle. Still, the circumstances of the underlying incident fail to satisfy the stringent test for punitive damages under Kentucky law. Accordingly, punitive damages are unavailable as a matter of law. An appropriate order will issue concurrently with this opinion.

Accordingly, and for the foregoing reasons, **IT IS ORDERED** as follows:

(1) That the Plaintiffs' motion for partial summary judgment [DE 27] be, and the same hereby is, **GRANTED**;

(2) That the Defendant's motion for partial summary judgment [DE 28] be, and the same hereby is, **GRANTED**; and

(3) That the Plaintiffs' claims for punitive damages be, and the same are, **DISMISSED WITH PREJUDICE.**

This the 22nd day of March, 2019.



**Signed By:**

*__Joseph M. Hood__*

**Senior U.S. District Judge**